IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(HOUSTON DIVISION)

| | | |
|---|---|---|
| CERDA INDUSTRIES, INC., and SHORMAX, INC. | § § § § § § § § § § § | |
| PLAINTIFFS, | | |
| v. | | Civil Action No. 4:08-CV-01127 (Jury Demanded) |
| NTS MIKEDON, L.L.C. | | |
| DEFENDANT | | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant, NTS Mikedon, L.L.C. ("NTS") files this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint ("Compl.") of Plaintiffs, Cerda Industries, Inc. ("Cerda") and ShorMax, Inc. ("ShorMax"), and for grounds respectfully shows the Court as follows:

NTS has filed a Motion to Dismiss the entirety of Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and alternatively, dismiss all federal claims for failure to state a claim and the remaining state law claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction ("Motion"). NTS files this memorandum of law in support of that Motion, which is incorporated herein by reference.

## I. INTRODUCTION

In response to a state lawsuit filed by NTS against Cerda Industries, Inc., ShorMax, Inc. and a former employee of NTS for theft of trade secrets, Cerda and ShorMax filed this lawsuit asserting frivolous claims of trademark infringement and unfair competition.[1] Cerda is a trench shield[2] manufacturing company and ShorMax is alleged to be its leasing arm. NTS specializes in the sale and rental of trench safety and traffic safety products. Cerda alleges that it is the owner of a trademark and trade dress identified as the color green used on some of the products it manufactures. Cerda's Complaint fails to disclose that its application for registration of the color green as a trademark or trade dress has been twice initially rejected by the United States Patent and Trade Office ("USPTO").

Cerda alleges that NTS sells or leases other green products and that NTS has

---

[1] Remarkably, Cerda's Original Complaint alleged that NTS' state court suit constituted an interference "with existing contractual or potential contractual relations between Cerda, ShorMax and their customers and potential customers." Original Complaint at ¶ 17. Cerda and ShorMax further asked this court to restrain NTS from maintaining or filing further suits against them or even alleging that Cerda, ShorMax and its employees had improperly used trade secret information of NTS. *Id.* at ¶ 27 and Prayer for Relief. They further alleged that NTS' state court suit was "improper" and formed the basis of their claim for Texas Common Law Unfair Competition. *Id.* at ¶ 30. After Defendant's attorney notified Plaintiffs' attorney that statements in a lawsuit are privileged and cannot form the basis of a cause of action, Plaintiffs amended their complaint, removing some but not all of the improper allegations. *See*, Compl. at ¶ 26 requesting that this Court restrain Defendant from maintaining or filing suits against Cerda, ShorMax and their employees.

[2] Trench shields, along with other related products, are used in construction and excavation projects and, among other purposes, provide safety to the workers.

2

painted some of the products it sells or leases a green color. Based on these allegations, Cerda and ShorMax allege federal trademark infringement under the Lanham Act, Texas statutory and common law trademark infringement and Texas common law unfair competition.

Cerda and ShorMax are both Texas corporations with their principal offices in Texas. NTS is a Delaware limited liability company with its principal office in Texas. Compl. at ¶¶ 3-4. Accordingly, diversity of citizenship does not exist and subject matter jurisdiction must arise, if at all, based on federal question. The only federal claim is based on the Lanham Act; all other claims arise under Texas state law.

The Motion and this memorandum demonstrate that each claim must be dismissed for failure to state a claim. Alternatively, once the federal question claim is dismissed the Court may opt to dismiss the supplemental state law claims.

## II. ARGUMENT AND AUTHORITIES

### A. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. It must appear beyond doubt that the plaintiff is unable to prove any facts in support of the claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S.Ct. 99 (1957).

The allegations in the complaint are taken as true and construed in a light most favorable to the plaintiff. *Brown v. NationsBank Corp.*, 188 F.3d 579, 585-86 (5th Cir. 1999). However, conclusory allegations or legal conclusions are not sufficient to defeat a motion to dismiss. When asserting the grounds for relief, a plaintiff is obligated to provide more than "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 75 U.S.L.W. 4337, 127 S.Ct. 1955, 167 L.Ed. 2d 929, 940 (2007). Factual allegations must be sufficient to raise a right to relief beyond speculation. *Id.*

Normally, a contest to subject matter jurisdiction should be considered first by the Court. Here, however, where there is no diversity of citizenship, it is proper for the Court to first decide the merits of the federal question claim and determine whether Plaintiffs have stated a claim upon which relief can be granted under the Lanham Act. *Finger Furniture Company, Inc. v. Mattress Firm, Inc.*, 2005 U.S. Dist. LEXIS 18648 * 5-6 (S.D. Tex. 2005). Because all of Plaintiffs' claim arise out of the assertion of a trademark, and no trademark exists, all claims should be dismissed for failure to state a claim. Alternatively, the Court may dismiss the federal question claim on the merits and refuse to hear the supplemental state law claims. *Id.* at 15-17.

## B. THERE IS NO TRADEMARK

The fundamental defect permeating the Complaint is Plaintiffs' core, and erroneous, allegation that the color green is a trademark or trade dress with respect to Cerda's trench shoring products. First, as demonstrated, the USPTO has already twice rejected Cerda's efforts to register the color green as a trademark. The USPTO has further denied Cerda's request to amend its application to the Supplemental Register based on its determination that doing so would result in overcoming the refusal under the Trademark Act, Sections 1, 2 and 45. Exh. 2 at 055. Second, even as an unregistered alleged trademark, Cerda cannot establish the requisite elements for protection.

The Lanham Act makes actionable "the deceptive and misleading use of marks" and protects "persons engaged in ... commerce against unfair competition." 15 U.S.C. § 1127; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992). Unregistered trademarks may be protected under the Lanham Act provided a plaintiff demonstrates that its unregistered mark would qualify for protection under federal trademark registration. 15 U.S.C. § 43(a); *Two Pesos,* 505 U.S. at 768. Thus, as this Court held in *Finger Furniture*, in order to bring a claim of trademark infringement under the Lanham Act, the supposed owner of the mark must show that: (1) the mark is protectable and (2) it has been used in commerce. *Finger Furniture,*

at * 7.[3] Cerda cannot establish the color green is protectable or that it is even using the color green.

In order for a mark to be protectable it must be distinctive. Although a color scheme can "at least sometimes" constitute a trademark, it is well settled that color can never be inherently distinctive. The alleged owner of the mark must establish that it has acquired a secondary meaning. See, *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211-212, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); *Qualitex Company v. Jacobson Products Company, Inc.*, 514 U.S. 159, 162-63, 115 S.Ct. 1300, 131 L.Ed. 2d 248 (1995). A secondary meaning is acquired when the primary significance of the feature (the color green) identifies the source of the product rather than the product itself. *Qualitex* at 163; *Finger Furniture* at *8. The color must identify and distinguish the goods so as to indicate their source. *Qualitex* at 163. The mark must be uniquely associated with the specific source. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998). While there is no fixed rule for the amount of proof necessary, in the case of a color mark for a trade dress it is accepted that the burden is heavy. See, *Mana Products, Inc. v. Columbia Cosmetics Mfg., Inc.*,

---

[3] The claims of ShorMax are easily dispensed with. It is not and does not claim to be the owner of the mark at issue. Since it cannot establish the first elemental prerequisite, it cannot state a claim for trademark infringement or unfair competition under the Lanham Act or any Texas statutory or common law cause of action.

65 F.3d 1063, 1070 (2nd Cir. 1995) (black cosmetic cases not entitled to trade dress protection).

Cerda alleges merely that consumers associate the color green with products originated by Cerda. Compl. at ¶ 8. However, here, just as in *Finger Furniture*, the examining attorney for the USPTO has rejected registration for the mark and determined Cerda's evidence was not sufficient to establish secondary meaning. *See*, Exh. 2 at 055-056 (the examining attorney stated: "applicant has failed to establish a claim of acquired distinctiveness for several reasons," "applicant has not met the burden of establishing that the proposed mark has acquired distinctiveness as a source indicator in the minds of consumers," "the purchasing public generally views color as an ornamental or decorative feature of goods.") Nor does Cerda even allege the elements required for proof of secondary meaning. To determine if the mark has a secondary meaning the court should consider the following factors: "the length and manner of use of the mark by the owner, the volume of sales, the amount and manner of advertising of the mark, the nature of the use of the mark in newspapers and magazines, consumer survey evidence, direct consumer testimony, and infringer's intent in copying the mark." *Finger Furniture* at * 8 citing *Pebble Beach Co.*, 155 F.3d at 541 (5th Cir. 1998). None of these elements are alleged or defined.

In addition, when attempting to seek protection of a trade dress (the design or packaging of a product), Plaintiffs have the burden of establishing that the matter sought to be protected is not functional. *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002). Trade dress protection extends only to incidental, arbitrary or ornamental product features which identify the source of the product. *Id.* The primary test for functionality is whether the product feature is essential to the use or purpose of the product or if it effects the cost of quality of the product. *Id.* at 356. Color schemes can be functional if it is a standard color in the industry or simply enable the user to more easily see the product. *Id.* at 357. Cerda makes no allegation and provides no facts to support any finding that the color scheme is not functional.

Additionally, a mark must also be used in commerce to bring a claim of trademark infringement. *Finger Furniture* at * 9. Here, although Cerda submitted a brochure to the USPTO that contains some products that are colored green, its current website with printable brochures contains no products with the color green. See, Exh. 3. Obviously, if Cerda is not using the alleged trade dress there is nothing to protect or infringe.

## C. IN THE ABSENCE OF A PROTECTABLE TRADEMARK-THERE CAN BE NO TEXAS COMMON LAW OR STATUTORY CLAIMS FOR INFRINGEMENT OR UNFAIR COMPETITION

In order to establish trademark infringement and unfair competition under Texas law, Cerda must show that it has a protectable trade dress that is being used by NTS and that the use is likely to cause confusion among consumers as to the affiliation, source or sponsorship of NTS' products. *The Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *see also Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App. - Houston [14th Dist.] 1992, no pet.) (a trademark infringement and unfair competition action asserted under Texas law presents essentially no different issues than under federal law). In this regard, Cerda makes two allegations. First, it complains that NTS advertises on its website that it sells Cerda products. Compl. at ¶ 12. Second, Cerda alleges that NTS offers products not manufactured by Cerda that are painted green. Compl. at ¶ 13. These allegations refute any trademark infringement or unfair competition rather than provide the basis for such claims.

First, the fact that NTS offers to lease or sell Cerda products identified as Cerda products cannot, as a matter of law, constitute confusion. *See, The Scott Fetzer Co.* at 484 (independent dealers and shops may use a mark to advertise truthfully that they sell certain branded products so long as the advertisement does not suggest affiliation

or endorsement by the markholder). Second, the fact that there are other products out there "that are not manufactured by Cerda that have been painted green" establishes that Cerda does not have a trade dress with respect to the color green, further confirming that there can be no infringement or confusion as a matter of law. *See, i.e.* Exh. 4.

### D. NO INFRINGEMENT

Even if Cerda could establish the color green as a trade dress, there can be no claim under federal or state law absent infringement. Infringement occurs when there is a likelihood of confusion. *Sunbeam Products, Inc. v. The West Bend Company*, 123 F.3d 246, 251 (5th Cir. 1997). To determine the likelihood of confusion, the court is to apply the "digits of confusion" test. *Id.* at 257. This test consists of a list of factors that tend to prove or to disprove that consumer confusion is likely. The factors are: (1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion. *The Scott Fetzer Co.*, 381 F.3d at 484-485 (5th Cir. 2004). Here, Cerda alleges merely that it has green products and that NTS sells and leases green products. Other than the fact that the color green is similar, there are no digits of confusion alleged and a claim for infringement has not

been and cannot be stated.

## PRAYER FOR RELIEF

Wherefore, NTS respectfully prays that all claims against it be dismissed with prejudice for failure to state a claim, that it have such other and further relief as to which it may show itself justly entitled, including attorney fees and costs. Alternatively, the Court should dismiss the federal claims asserted and refuse to exercise jurisdiction over the supplemental state law claims.

Respectfully submitted,

*Eugene B. Wilshire* (signature)

Eugene B. Wilshire
SBN 21665500
3000 One Houston Center
Houston, Texas 77010
(713) 651-1221
(713) 651-0020 (facsimile)

ATTORNEY-IN-CHARGE FOR DEFENDANT NTS
MIDEDON L.L.C

Of Counsel:
Jacalyn D Scott
Federal ID No. 3007
Wilshire Scott & Dyer, P.C.
1221 McKinney, Suite 3000
Houston, Texas 77010
(713) 651-1221
(713) 651-0020 (facsimile)
jscott@wsd-law.com

## Certificate of Service

The undersigned certifies that a true copy of the foregoing Memorandum in Support of Motion to Dismiss has been served this 27th day of June, 2008 by certified mail return receipt requested to attorney-in-charge for the Plaintiff as follows:

Barry Heslop, Esq.
1111 Heights Boulevard
Houston, Texas 77008
713-426-0707

*Eugene B. Wilshire*
Eugene B. Wilshire